UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| GREGORY CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No.: |
| v. ) | |
| ) | Division |
| DEPUTY AUSTIN CLARK, ) | |
| *in his individual capacity only*, ) | **JURY TRIAL** |
| ) | **DEMANDED** |
| Defendant. ) | |

### Introduction, Not Part of Complaint

Plaintiff Gregory Clark was minding his own business at a rest area on I-55. Defendant Deputy Austin Clark (no relation), approached Plaintiff and asked whether he knew anything about gun shots in the area. Plaintiff presented his concealed carry license and identification and said no. Without reason Defendant "ran Plaintiff", which Plaintiff protested mildly.

Defendant then followed Plaintiff out of the rest area and ultimately arrested Plaintiff without a scintilla of suspicion that Plaintiff had committed a crime. Defendant unconstitutionally searched Plaintiff's truck bed and stole two bullets from Plaintiff's gun.

Plaintiff sues for violation of his civil rights.

### COMPLAINT – VIOLATION OF CIVIL RIGHTS

Comes now **Plaintiff** Gregory Clark, by counsel W. Bevis Schock and Christian Misner, and for his Complaint for violation of his civil rights, states:

### PARTIES

1. Plaintiff Gregory Clark is an individual residing in Matteson, Ill, a suburb of Chicago.

2. Plaintiff is African-American.

3. Defendant Deputy Austin Clark is a deputy with the Ste. Genevieve County, Missouri Sheriff's Department.

4. Plaintiff sues Defendant in his individual capacity only.

## SUBJECT MATTER JURISDICTION

5. Plaintiffs bring this action pursuant to 42 U.S.C. §1983 and §1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

## VENUE

6. All relevant events occurred in the County of Ste. Genevieve, Missouri.

7. The County of Ste. Genevieve, Missouri is in the Eastern District of Missouri, in the Southern Division.

## COLOR OF STATE LAW

8. At all relevant times Defendant acted under color of state law. Particularly, at all relevant times he acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

## JURY DEMAND

9. Plaintiff demands a jury trial on his claims.

## FACTS

10. On January 26, 2016 Plaintiff was at the Bloomsdale rest stop for the northbound lanes on Highway 55 in Ste. Genevieve County.

11. His pick-up truck was at the northern most parking space on the outer, easternmost ring of spaces. He was standing at a table near his car, making a phone call, and minding his own business.

12. Plaintiff saw a black SUV pull up several spaces to the south on that same outer ring of spaces.

13. Two men, well dressed in plain clothes and carrying weapons, got out of the SUV and walked toward Plaintiff.

14. One of the gentlemen was Defendant.

15. Due to their attire Plaintiff presumed they were police officers.

16. Educators at a nearby school had that day reported that they had heard gun shots.

17. The gentlemen reached Plaintiff and said that they were investigating gun shots.

18. Plaintiff holds a concealed carry permit.

19. Plaintiff had his weapon with him.

20. Plaintiff immediately reached in his upper coat pocket, pulled out his wallet, and gave one of the gentlemen his concealed carry permit, his driver's license, and military identification (retired).

21. Plaintiff stated that he had not heard shots or seen anything unusual.

22. Defendant stepped to the side but not out of ear shot and spoke into some sort of walkie talkie like device.

23. On inference Defendant was speaking to dispatch for the Ste. Genevieve Sheriff's Department.

24. Defendant read into the device Plaintiff's identification information.

25. Based on the side of the conversation which was audible to Plaintiff, someone in dispatch confirmed Plaintiff's identity, that Plaintiff has a CDL, and that Plaintiff had no outstanding warrants.

26. Defendant returned the identification to Plaintiff.

27. Defendant asked Plaintiff to point out his vehicle.

28. Plaintiff pointed to his nearby pick-up truck, a Toyota Tundra.

29. Plaintiff stated words to the effect of: "Why did you run my information and would you have done that to someone else?"

30. Defendant then stated words to the effect of "My boss wants to know who I am talking to."

31. Defendant then stated words to the effect of "Don't' play the race card with me."

32. Defendant made his statement about the race card in an aggressive manner.

33. Plaintiff then got in his vehicle and drove out of the rest area and onto northbound I-55.

34. The officers followed Plaintiff northbound.

35. Plaintiff became nervous about being followed.

36. Plaintiff got off the highway at the next exit a mile or two to the north, went over the overpass and started back southbound.

37. The officers followed Plaintiff up, over the bridge and back onto the southbound entrance ramp and then continued to follow him southbound.

38. Plaintiff immediately put the car on cruise control at the 70 mph limit.

39. Plaintiff saw in his rearview mirror that there were now marked police cars also following Plaintiff.

40. On inference Defendant called for the other cars.

41. During his drive Plaintiff never broke any traffic laws.

42. While southbound Plaintiff put his weapon in the vehicle's console.

43. After a few miles Plaintiff pulled off at an exit and stopped on the ramp.

44. The conduct of Defendant made Plaintiff's stop on the exit ramp constructively involuntary.

45. The officers activated their vehicle's emergency lights thereby confirming that at that moment Plaintiff was not free to go.

46. Plaintiff put his hands out the driver's side window.

47. Defendant exited his vehicle.

48. Defendant was screaming to Plaintiff to get out of the car and demanding to know the location of the weapon.

49. Defendant had his weapon drawn.

50. Plaintiff got out of the car with his hands up.

51. Upon directive from Defendant Plaintiff stood off to the side approximately 15-20 feet away from his own vehicle.

52. Plaintiff told Defendant that the weapon was in the console.

53. Defendant then spent some time searching the inside of the passenger compartment of Plaintiff's truck.

54. During that time period Plaintiff's friend was still on Plaintiff's phone on the speaker phone in the vehicle and Defendant and the friend spoke a few words to each other.

55. Defendant eventually got out of the truck and gave the gun to another officer.

56. That other officer opened up the gun.

57. Defendant then used the key from the truck to unlock and raise the lid of the vehicle's cargo section.

58. Defendant searched that portion of the vehicle.

59. Plaintiff was not near the vehicle at that time.

60. Plaintiff did not consent to the search of the cargo area of his vehicle.

61. The cargo section contained dirty clothes, food and other non-descript items.

62. Defendant asked where Plaintiff's phone was.

63. Plaintiff stated that it had slid down "between the seat", or words to the effect.

64. Defendant asked Plaintiff if he had hidden the phone.

65. Defendant then went back to the truck and found the phone.

66. Defendant brought the phone back to Plaintiff and asked him to turn it off.

67. Plaintiff said to Defendant that Plaintiff's friend was on the other line, and that Plaintiff would not turn off the phone.

68. Defendant walked away as though irritated.

69. Defendant then approached Plaintiff and said words to the effect of: "you can go ahead and tell me if you blew off steam and fired off a couple of rounds."

70. Plaintiff stated words to the effect of "I haven't fired the weapon in over five years."

71. Defendant stated words to the effect of "You are missing two bullets."

72. Plaintiff stated words to the effect of "I haven't taken bullets from the weapon and I haven't fired it."

73. Defendant then walked away and had conversation with another officer.

74. A moment later Defendant walked back and stated to another officer words to the effect of, "Cuff him; the gun is stolen."

75. The other officer then handcuffed Plaintiff.

76. Plaintiff stood off to the side near another officer.

6

77. Plaintiff said words to the effect of: "I thought this was taken care of. The gun didn't come with my property when I moved back from California after getting out of the military, and I reported it stolen. It turned up a week later and I reported it as recovered."

78. In 1985 when Plaintiff had left the military and moved from California to North Carolina he had shipped his weapon in a box. The box became lost in transit. Plaintiff reported the gun stolen. The box turned up a few days later and Plaintiff reported the gun as recovered.

79. Plaintiff remained handcuffed for approximately 15 minutes.

80. During that time period Defendant left the scene.

81. At the conclusion of that period of time officers released Plaintiff.

82. Plaintiff got in his vehicle.

83. As he sat down in the driver's seat Plaintiff observed the following facts regarding the gun and his ammunition:

    a. His holster was on the passenger seat,

    b. The weapon was in the center console,

    c. The magazine was emptied into the center console, and

    d. Two 40 mm rounds were missing, that is there were 14 bullets in the gun before the incident began and 12 bullets on the console after the incident ended.

84. On inference, Defendant stole Plaintiff's two bullets.

85. The situation was then concluded and Plaintiff drove off.

## DAMAGES

86. In the course of those events Plaintiff suffered:

    a. Loss of physical liberty while detained and/or arrested,

    b.    Garden variety emotional distress including terror, stress, fear, anxiety, humiliation, embarrassment, and disgrace, and

    c.    Loss of trust in law enforcement, including law enforcement's duty to enforce the law equally among all citizens.

87.    Plaintiff continues to suffer the latter two damages.

## PROXIMATE CAUSE

88.    Plaintiff's damages were the natural and proximate results of Defendant's actions.

## RECKLESS DISREGARD - PUNITIVE DAMAGES

89.    The actions of Defendant were:

    a.    Malicious or recklessly indifferent to Plaintiff's constitutional rights, and

    b.    Taken in the face of a perceived risk that they would violate federal law.

90.    Plaintiff is entitled to awards of punitive damages against Defendant in his individual capacity, in order to punish him and to deter others.

## ATTORNEY'S FEES AND COSTS - 42 U.S.C. 1988

91.    Plaintiff's substantive claims for all Counts are brought under the Civil Rights Act, 42 U.S.C. 1983.

92.    In pursuit of his federal civil rights claims, Plaintiff is incurring reasonable attorney's fees and costs, including taxable and non-taxable costs.[1]

93.    Plaintiff seeks his reasonable attorney's fees and costs under 42 U.S.C. 1988 for the pursuit of those claims.

## NO QUALIFIED IMMUNITY

---

[1] 42 U.S.C. 1988; *Lefemine v. Wideman*, 133 S. Ct. 9, 10 (2012).

94. All of the conduct of Defendant was not based on only a mistaken but objectively reasonable belief that there was probable cause to hold, arrest or prosecute Plaintiff and so Defendant is not entitled to qualified immunity.[2]

95. There was no conflicting information that could not be immediately resolved.[3]

96. Defendant was plainly incompetent and/or knowingly violated the law.[4]

## COUNT I
## FOURTH AMENDMENT
## INITIAL SEIZURE OF PERSON WHILE RUNNING IDENTIFICATION

97. Plaintiff incorporates by reference all prior paragraphs.

98. When Defendant ran Plaintiff's identification Plaintiff was detained in that he was not free to go or to terminate the interaction.

99. At that moment a reasonable person in the position of Plaintiff would not have thought he was free to leave.[5]

100. One reason Plaintiff was not free to leave is that Defendant was in possession of Plaintiff's driver's license, concealed carry permit and military identification.

101. An officer may not detain a subject even momentarily without reasonable, objective grounds for doing so.[6]

102. Defendant had no reasonable, objective grounds to detain Plaintiff while running Plaintiff's identification.[7]

---

[2] *Dowell v. Lincoln County*, 762 F.3d. 770, 777 (8th Cir. 2014)

[3] *Borgman v. Kedley*, 646 F.3d. 518, 522 (8th Cir. 2011)

[4] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)

[5] *Livers v. Schenck*, 700 F.3d 340, 358 (8th Cir. 2012)

[6] The officer's reasonable suspicion must be based upon particularized, objective facts and rational inferences from those facts. *United States v. Smith*; 648 F.3d 654, 658 (8th Cir. 2011) (internal quotation marks omitted) (quoting *United States v. Lopez-Mendoza*, 601 F.3d 861, 865 (8th Cir. 2010)

103. Although Plaintiff had a gun he also had a concealed carry permit, and Defendant had not a scintilla of articulable facts which would have supported a belief that Plaintiff had fired shots or committed any other crime.[8]

104. At that moment:

    a. The intrusion on Plaintiff's liberty was substantial, and

    b. The government had no interest in the detention of Plaintiff.[9]

## PRAYER

WHEREFORE, Plaintiff prays for judgment under the Fourth Amendment and pursuant to 42 U.S.C. 1983 and 1988 against Defendant in his individual capacity for the initial seizure of Plaintiff while Defendant was running Plaintiff's identification, for compensatory damages and for punitive damages, for reasonable attorney's fees and non-taxable expenses, for costs, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT II
## FOURTH AMENDMENT
## SEIZURE OF PERSON AT EXIT RAMP

105. Plaintiff incorporates all prior paragraphs.

106. The fact that Plaintiff had changed direction on the highway did not manufacture cause for a lawful stop at the exit ramp.[10]

---

[7] *United States v. Mendenhall,* 446 U.S. 544, 556 (1980) (opinion of Stewart, J.)
[8] *Terry v. Ohio*, 392 U.S 1, 24 (1968)
[9] The reasonableness of a seizure under the Fourth Amendment is determined by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests." *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cnty.*, 542 U.S. 177, 187-88 (2004) (internal quotation marks omitted) (quoting Delaware v. Prouse, 440 U.S. 648, 654 (1979))
[10] *Liberal v. Estrada*, 632 F.3d. 1064, 1078 (9th Cir. 2011)

107. The fact that Plaintiff had a concealed carry permit did not produce a reasonable belief that he was dangerous to the officer.[11]

108. From the moment when Defendant approached Plaintiff at the exit ramp screaming with his gun drawn through the time of his release, Plaintiff was detained in that he was not free to go or to terminate the interaction, in that a reasonable person in the position of Plaintiff would not have thought he was free to leave.

109. Defendant had no reasonable, objective grounds to detain Plaintiff while at the highway exit ramp.

110. Defendant had not a scintilla of articulable facts which would have supported a belief that Plaintiff had fired shots or committed any other crime.

111. Defendant detained Plaintiff for an unreasonable length of time.[12]

112. While Plaintiff was detained at the exit ramp:

    a.    The intrusion on Plaintiff's liberty was substantial, and

    b.    The government had no interest in the detention of Plaintiff.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment under the Fourth Amendment and pursuant to 42 U.S.C. 1983 and 1988 against Defendant in his individual capacity for the seizure of

---

[11] *Bellotte v. Edwards*, 629 F.3d 415, 423 (4th Cir. 2011):  In a challenge to a no knock entry the court stated: "It should go without saying that carrying a concealed weapon pursuant to a valid concealed carry permit is a lawful act.  The officers admitted at oral argument, moreover, that 'most people in West Virginia have guns.'  Most importantly, we have earlier rejected this contention[, the speculation that people in the category of concealed carry holders have potential for a perfect storm of violence]. *Gould v. Davis,* 165 F.3d 265, 272 (4th Cir.1998); *accord United States v. Smith,* 386 F.3d 753, 760 (6th Cir.2004); *United States v. Marts,* 986 F.2d 1216, 1218 (8th Cir.1993).  We recognized over a decade ago that [t]his clearly was not and is not the law, and no reasonable officer could have believed it to be so.' *Gould,* 165 F.3d at 272."

[12] *Binay v. Bettendorf*, 601 F.3d. 640 (6th Cir. 2010).

Plaintiff at the exit ramp, for compensatory damages and for punitive damages, for reasonable attorney's fees and non-taxable expenses, for costs, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT III
## FOURTH AMENDMENT
## EXCESSIVE FORCE

113.  Plaintiff incorporates all prior paragraphs.

114.  After Plaintiff stopped on the exit ramp Defendant approached Plaintiff with his gun drawn.

115.  Drawing a gun is a use of force.[13]

116.  Defendant drawing his gun was not objectively reasonable under the particular circumstances.[14]

117.  Defendant ordered Plaintiff handcuffed.

118.  Handcuffing is a use of force.[15]

119.  Defendant handcuffing Plaintiff was not objectively reasonable under the particular circumstances.

120.  Although Plaintiff had a gun Plaintiff had shown Defendant his concealed carry permit and so Defendant knew that Plaintiff had a right to have the gun and had gone through a background check to obtain that right.

121.  Plaintiff:

   a.  Had committed no crime,

   b.  Posed no immediate threat to the safety of the officers or others,

---

[13] *Gallagher v. City of W. Covina*, 141 F. App'x 577, 578 (9th Cir. 2005)
[14] *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994)
[15] *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1252 (10th Cir. 2013)

12

    c.    Was not actively resisting arrest, nor

    d.    Was attempting to evade arrest by flight.[16]

122. Defendant used excessive force when he drew his gun on Plaintiff and directed another officer to handcuff Plaintiff.

### PRAYER

WHEREFORE, Plaintiff prays for judgment under the Fourth Amendment and pursuant to 42 U.S.C. 1983 and 1988 against Defendant in his individual capacity for the use of excessive force by drawing his gun and ordering Plaintiff handcuffed, for compensatory damages and for punitive damages, for reasonable attorney's fees and non-taxable expenses, for costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT IV
### FOURTH AMENDMENT
### SEARCH OF CARGO AREA

123. Plaintiff incorporates all prior paragraphs.

124. Defendant searched the cargo area of Plaintiff's Tundra.

125. At that time Plaintiff was not near that part of the vehicle.

126. The government had no concern at issue to justify the search of the cargo area.[17]

127. The search of the cargo area was unreasonable under the circumstances.[18]

### PRAYER

WHEREFORE, Plaintiff prays for judgment under the Fourth Amendment and pursuant to 42 U.S.C. 1983 and 1988 against Defendant in his individual capacity for the search of the cargo area of Plaintiff's vehicle, for compensatory damages and for punitive damages, for

---

[16] *Graham v. Connor,* 490 U.S. 386, 388 (1989)
[17] *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 665 (1995)
[18] *Arizona v. Gant*, 556 U.S. 332 (2009)

reasonable attorney's fees and non-taxable expenses, for costs, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT V
## FOURTEENTH AMENDMENT - SUBSTANTIVE DUE PROCESS
## THEFT OF BULLETS

128. Plaintiff incorporates all prior paragraphs.

129. Defendant stole two bullets from Plaintiff.

130. Defendant deliberated about stealing the bullets.[19]

131. The purpose of Defendant stealing two bullets from Plaintiff was to set up a false charge against Plaintiff for shooting off bullets in the rest area.

132. Stealing the bullets to set up framing Plaintiff violated Plaintiff's right to substantive due process.[20]

133. Stealing the bullets was unjustifiable by any government interest[21]

134. Stealing the bullets is conscience shocking.

135. Stealing the bullets was a brutal and inhumane abuse of official power.[22]

## PRAYER

WHEREFORE, Plaintiff prays for judgment under the Fourteenth Amendment substantive due process clause and pursuant to 42 U.S.C. 1983 and 1988 against Defendant in his individual capacity for stealing the bullets, for compensatory damages and for punitive damages, for reasonable attorney's fees and non-taxable expenses, for costs, and for such other relief as the court finds to be just, meet and reasonable.

---

[19] *Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 466 (8th Cir. 2010)
[20] *Luckes v. Cty. of Hennepin, Minn.*, 415 F.3d 936, 939 (8th Cir. 2005)
[21] *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998).
[22] *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347,* 591 F.3d 624, 634 (8th Cir.2010)

## COUNT VI
## FOURTEENTH AMENDMENT - EQUAL PROTECTION

### In The Alternative

136. Plaintiff incorporates all prior paragraphs.

137. Both stops of Plaintiff were based on his race.[23]

138. If Plaintiff were Caucasian Defendant would not have run Plaintiff's identification, followed Plaintiff, or called for additional cars, all of which made Plaintiff nervous, all leading to Plaintiff's involuntary stop at the exit ramp.

139. Any reasonable person in Plaintiff's position would have been made nervous by those events.

140. No actions of Plaintiff could conceivably have led to the events described herein other than Plaintiff's race, and so Plaintiff makes more than a bald assertion that the stop was based only on race.[24]

141. The conduct of Defendant violated Plaintiff's right to equal protection.

### PRAYER

WHEREFORE, Plaintiff prays for judgment under the Fourteenth Amendment equal protection clause and pursuant to 42 U.S.C. 1983 and 1988 against Defendant in his individual capacity for detaining Plaintiff, and then following and detaining him again, using excessive force, searching the cargo area, and stealing the bullets, all due to Plaintiff's race, for compensatory damages and for punitive damages, for reasonable attorney's fees and non-taxable expenses, for costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT VI

---

[23] *Whren v. U.S.*, 517 U.S. 806 (1996)
[24] *Conrod v. Davis*, 120 F.3d. 92 (8th Cir. 1997)

15

## FIRST AMENDMENT FREE SPEECH CLAUSE
## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

### In The Alternative

142. Plaintiff incorporates all prior paragraphs.

143. Defendant followed Plaintiff, called for additional cars, detained Plaintiff at the exit ramp, used excessive force, conducted the cargo area search, and stole the bullets all because Plaintiff stated words to the effect of "Why did you run my information and would you have done that to someone else?"

144. Defendant's conduct was in retaliation for Plaintiff's exercise of his First Amendment rights.[25]

### PRAYER

WHEREFORE, Plaintiff prays for judgment under the First Amendment free speech clause and pursuant to 42 U.S.C. 1983 and 1988 against Defendant in his individual capacity for retaliation for exercise of First Amendment rights, for compensatory damages and for punitive damages, for reasonable attorney's fees and non-taxable expenses, for costs, and for such other relief as the court finds to be just, meet and reasonable.

Respectfully Submitted,
Co-Counsel for Plaintiff

   /s/ W. Bevis Schock   .
W. Bevis Schock, 32551MO
Attorney for Plaintiff
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

---

[25] *Buffkins v. City of Omaha*, 922 F.2d 465 (8th Cir. 1990)

/s/ Christian T. Misner
Christian T. Misner
Attorney at Law
Bar Number #65572MO
P.O. Box 69124
Saint Louis, Missouri 63169
Telephone:  314-529-1947
Fax:  314-266-5574